SMITH, Judge.
The Stokes appeal two final summary judgments determining that their cause of action for negligent removal of lateral support, filed against defendants Richard Gene Florence and Buck Sconiers, d/b/a Sconiers Septic Tank and Fill Dirt Service, was barred by the four-year statute of limitations set forth in section 95.11(3)(a), Florida Statutes (1989). We reverse.
In 1985, Huggins Construction Company built a beach house for the Stokes on Gray-ton Beach. Sometime before July 24, 1987, the adjoining property owner, Richard Gene Florence, hired Sconiers, an excavator, to remove between six and seven feet of soil from a portion of his property which was adjacent to the east side of the Stokes’ lot. According to the allegations of the second amended complaint, following the excavation, sand and soil from the Stokes’ lot shifted and slid into the excavation.
In the meantime, the Stokes were embroiled in a controversy with the builder, Huggins Construction Company. Mr. Stokes allegedly accused Huggins of using inferior pilings which were not properly installed. On June 3, 1986, Jackie Huggins, president of Huggins Construction Company, wrote a letter to Stokes which provides in pertinent part:
However, you know as well as I do what the problem is. You are once again attempting to shift your responsibilities to someone else. You know that your neighbor on the East side has removed the top 6-7 feet of soil next to your house and the sand continues to shift in that direction. I told you and your attorney in my office what would be necessary to stop this problem and that it was needed now and not to wait. You did not respond to that. I am now telling you once again that this needs to be taken care of immediately before major problems occur. You have now been warned twice. Until this problem is corrected, I am withdrawing my contractor’s Warranty and will not accept any further responsibility until this problem is solved.
On July 24, 1987, after a summer storm, the Stokes’ house fell and was destroyed.
In May 1990, the Stokes sued Huggins and their insurer, Florida Windstorm Underwriting Association,[1] for damages which resulted when the beach house fell. On July 15,1991, the Stokes amended their complaint to include Florence and Sconiers as additional defendants.
After filing responsive pleadings, Florence and Sconiers filed identical motions for summary judgment contending that the Stokes’ action against them was time-barred. They contended that the Stokes knew or should have known of their alleged negligent acts on or before June 3, 1986, when Huggins advised Stokes by letter that excavation on the Florence property was causing sand to shift from under and around the Stokes’ house.
Thereafter, the trial court entered orders granting the motions for summary judgment, essentially agreeing with appellees that as of June 3, 1986, the Stokes were on notice that the removal of lateral support on the east side of their property, by Florence, had caused sand to shift from under and around their house. The court found that as of this *329 date, the Stokes were damaged by the removal of the lateral support and by Huggins withdrawal of his warranty until the problem was solved. The court noted that for purposes of the statute of limitations, a cause of action accrues when the last element constituting the cause of action occurs. § 95.-081(1), Fla.Stat. (1989). Thus, the court ruled, even assuming appellees owed a duty to the Stokes, and assuming that the negligent removal of lateral support was a breach of that duty, the letter of Huggins dated June 3, 1986, supplied the last element constituting a cause of action — damage. Because the Stokes’ suit was filed in excess of five years after this letter, the court found, their suit was time-barred.
The parties do not dispute the general rule, set forth in 1 Am.Jur.2d Adjoining Landowners, § 69 (1962), that the statute of limitations begins to run against an action for damages based on impairment of lateral support to land not from the time of excavation but from the actual occurrence of mischief, which is the subsidence or sliding of the earth, and that a new and separate cause of action arises with each new subsidence. The Stokes urge application of the majority rule, while appellees contend that the rule is not applicable because as of June 3, 1986, the date of Huggins’ letter to Stokes, the Stokes were on notice of an invasion of their legal rights resulting in permanent injury. Johnson v. Mullee, 385 So.2d 1038 (Fla. 1st DCA 1980), rev. denied, 392 So.2d 1377 (Fla.1981); and Smith v. Continental Insurance Co., 326 So.2d 189 (Fla. 2d DCA 1976).
Although the Stokes have cited no Florida appellate decision directly on point, they rely upon two cases which they contend are analogous: Town of Miami Springs v. Lawrence, 102 So.2d 143 (Fla.1958); and Petroleum Products Corp. v. Clark, 248 So.2d 196 (Fla. 4th DCA 1971). In the first case, surface water continually overflowed the property of the plaintiffs as a result of the Town raising the elevation of one of its streets without providing for the proper draining of surface waters. The Town alleged that the cause of action arose when it first raised the elevation of its streets and that the plaintiffs’ suit was time-barred. (The Town was relying on the one year statute of limitations for suits against cities and villages). The supreme court disagreed, ruling that the statute of limitations does not begin to run until actual harm is inflicted to the plaintiffs land, regardless of the installation date of the construction or obstruction causing the overflow. The court quoted with approval the following language from 56 Am.Jur. Waters § 443 p. 858-9:
[I]f the overflow is merely temporary, occasional or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that such repetition of the overflow gives rise to a new cause of action for which successive actions may be brought.
In the second case, Petroleum Products Corp. v. Clark, Petroleum Products was engaged in the refining of oil, and a reservoir located on its land was used for the storage of oil. The oil percolated underground during the refining process and surfaced on the adjoining plaintiffs’ property, a trailer park, located directly south of the reservoir. In 1962, the plaintiffs observed oil on the surface of their property after heavy rainstorms. In the latter part of 1966 and early 1967 the plaintiffs noticed that the lake on their property had become oily, and they began to receive complaints. A subsequent investigation to determine the cause revealed that much of the surface beneath the plaintiffs’ property was saturated with oil. When they filed suit for trespass against Petroleum Products on June 3, 1968, Petroleum Products asserted as an affirmative defense the three year statute of limitations. The trial court entered final judgment for the plaintiffs finding that the limitation period did not begin to run until the permanency of the injury became discernable to the plaintiffs as owners in 1967. In affirming, the appellate court quoted the identical passage from 56 Am.Jur.2d § 443 which the Lawrence court relied upon, and in addition, quoted from the Annotation “When Statute of Limitations Be *330 gins to Run Against Damage From Overflow of Land Caused by Artificial Construction or Obstruction,” 5 ALR2d 302, p. 322-5, (1949), which states as follows:
Whether the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient or recurring, continuing or consequential in nature, it has been held that the limitation period starts to run only when the plaintiffs’ land is actually harmed by overflow, and that, for the purposes of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent.
We believe the same general proposition should apply in this case. We cannot agree with the trial court that the limitations period started to run on June 3, 1986, as at that point, the Stokes had suffered no actual harm due to the excavation. The loss of the contractor’s warranty itself did not constitute injury or damage because the lost warranty only became consequential when the house fell down. No damages were ascertainable on June 3, 1986, and were entirely speculative at that point. Nothing prevented Florence from abating the subsidence by providing artificial support.[2] If the excavation on Florence’s property was indeed the cause of the fallen house, then abatement could have prevented the damages.
The cases relied upon by appellees are distinguishable. In Smith v. Continental Insurance Co., the court ruled that the statute of limitations began to run when the plaintiff was struck by a chandelier which fell from the ceiling of an inn where he was dining as an invitee. At that point, there was notice of an invasion of the legal rights of the plaintiff, and the plaintiff was put on notice of his right of action against the contractor. In this case, Huggins’ withdrawal of his contractor’s warranty did not constitute an invasion by appellees of the legal rights of the Stokes.
Appellees’ reliance upon Johnson v. Mul-lee, is similarly misplaced. In that case, this court ruled that the statute of limitations did not begin to run when the decedent patient discovered a cancerous lump in her breast, which her doctor had allegedly misdiagnosed, but that the statute of limitations began to run a few years later when the cancer appeared in other parts of her body, because it had metastisized beyond the surgically removed portions of her body. The mere appearance of the cancer was not the negligent act of which she complained; it was the doctor’s failure to discover the cancer before it metastisized. She did not have notice that this had occurred until 1975. As this court recognized, it is the knowledge of injury, not the notice of probable or possible injury, that is controlling. Similarly, in this case, the Stokes did not have knowledge of the permanency of their injury until their house fell down, even though they may have been on notice of probable or possible injury as early as Huggins’ letter of June 3, 1986.
REVERSED and REMANDED for further proceedings consistent with this opinion.
KAHN and LAWRENCE, JJ., concur.

. Florida Windstorm Underwriting Association is no longer a party to this appeal as it has settled its dispute with the Stokes.

. The June 3, 1986 letter from Huggins to Stokes, it should be noted, reminded Stokes of what he had already told him was necessary to “stop the problem," and that it needed “to be taken care of immediately before major problems occur.”